## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JDS FOURTH AVENUE LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-10888 (KBO)<br><br>**RELATED DOCKET NOS. 14, 15, 16, & 17**<br>**Hearing Date: July 8, 2021 at 3:00 p.m. (ET)** |

**OMNIBUS OBJECTION OF LARGO 613 BALTIC STREET PARTNERS LLC TO DEBTOR'S (I) POST-PETITION FINANCING MOTION, (II) INTERIM COMPENSATION PROCEDURES MOTION, (III) APPLICATION TO EMPLOY COUSINS LAW LLC AS DEBTOR'S COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE, AND (IV) APPLICATION TO EMPLOY RSR CONSULTING LLC AS DEBTOR'S FINANCIAL ADVISOR *NUNC PRO TUNC* TO JUNE 7, 2021**

Largo 613 Baltic Street Partners LLC ("Largo") hereby submits this omnibus objection (the "Objection") to (i) Motion of JDS Fourth Avenue LLC, for Entry of an Order Authorizing the Debtor to Obtain Post-Petition Financing [D.I. 14] (the "DIP Financing Motion"), (ii) Debtor's Motion for Entry of an Order Pursuant to Bankruptcy Code Sections 105(a), 330, and 331 and Bankruptcy Rule 2016 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals [D.I. 15] (the "Interim Compensation Procedures Motion"), (iii) Application of the Debtor for Entry of an Order Pursuant to Bankruptcy Code Sections 327(a), 328, 330, and 1107 Authorizing Employment and Retention of Cousins Law LLC as Counsel for the Debtor and Debtor in Possession *Nunc Pro Tunc* to the Petition Date [D.I. 16] (the "Debtor's Counsel Employment Application"), and (iv) Application of the Debtor for Entry of an Order Authorizing Employment and Retention of RSR Consulting LLC as Financial Advisor *Nunc Pro Tunc* to June 7, 2021 [D.I. 17] (the "Debtor's Financial Advisor Employment Application" and collectively with the DIP Financing Motion, the Interim

Compensation Procedures Motion, and the Debtor's Counsel Employment Application, the "Motions"). In support of the Objection, Largo respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Motions should be denied because this chapter 11 case should be dismissed as an unauthorized chapter 11 petition that was filed in bad faith to try to gain litigation leverage in the two-party dispute between the Debtor and Largo. Because Largo believes this chapter 11 case must be dismissed for the reasons set forth in its motion to dismiss the Debtor's chapter 11 case [D.I. 7] (the "Dismissal Motion")[1], it is compelled to oppose the Motions as wholly unnecessary because there is nothing to accomplish in this chapter 11 case. The filing of the Motion is nothing more than a transparent attempt by the Debtor to try to legitimize the pendency of a bankruptcy proceeding without an operating business to reorganize or creditors who are unrelated to the pending lawsuits or employees to protect.

2. Given the overwhelming facts and law in favor of the dismissal of this unapproved chapter 11 case, the Motions can be denied summarily as moot in conjunction with the closure of this chapter 11 case that should never have been filed in the first place. Putting aside the denial of the Motions as part and parcel of the dismissal of this bad faith chapter 11 filing, there are also independent substantive reasons that warrant the denial of the Motions.

3. Turning to the merits of the Motions, each of them is problematic because they seek relief that is insupportable and impermissible under the Bankruptcy Code and relevant case law. Among other things, the Motions would allow the Debtor's proposed bankruptcy counsel and financial advisor to be paid approximately $450,000 in the aggregate post-petition, funded by an insider loan from another entity controlled by Michael Stern, who owns the Debtor's

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the Dismissal Motion.

managing member. In short, the Debtor seeks to obtain the DIP facility for improper purposes when, in reality, it has no legitimate business reason to incur post-petition debt.

4. While Largo maintains that this case should be dismissed, the Debtor's present Motions also should be denied as needless and inappropriate. Alternatively, the Court should delay consideration of the Motions until the Court decides Largo's Dismissal Motion.[2]

## BACKGROUND

5. The history of the Debtor — including mismanagement by Stern — is set forth at length in the Dismissal Motion and the supporting June 10, 2021 Declarations of Nicholas Werner and Attorney Craig Flanders, each of which are incorporated herein by this reference.[3]

6. The Dismissal Motion was necessary because the chapter 11 petition was filed without the requisite approval of Largo, the Debtor has only one asset and one non-litigation creditor, and no employees or operations to speak of, and this case was filed in bad faith as a litigation tactic.

7. The Debtor filed its voluntary chapter 11 petition on June 1, 2021 (the "Petition Date"), just a few hours before a discovery conference regarding Largo's discovery sanctions motion filed in the Baltic Action, and less than 24 hours before trial was to commence in the Tona Action.

8. The Debtor, through its managing member, JDS Fourth Avenue JV II LLC, which is wholly owned and controlled by Stern, continues to manage its one asset – its 50% membership interest in Fourth Avenue JV LLC, which is an indirect owner of the Project – as a

---

[2] Currently, the Dismissal Motion and the Motions are scheduled to be heard at the July 8, 2021 omnibus hearing where the Dismissal Motion will be heard first.

[3] The background facts expressly included in this Objection occurred after the filing of the Dismissal Motion.

debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. *See* Schedule A/B [D.I. 22]. No trustee or examiner has been appointed in this case.

9. The Office of the United States Trustee (the "OUST") did not appoint an official committee of unsecured creditors for this chapter 11 case. *See* D.I. 21.

10. No procedural or operational "first day" motions were filed on the Petition Date because the Debtor has no business operations.

11. Three days after the Petition Date, on June 4, 2021, the Debtor filed the Declaration of Michael Stern in Support of Bankruptcy Petition [D.I. 4] (the "Stern Declaration").

12. The Stern Declaration acknowledges that the Project is complete, all of the condominium units have been sold, and the Debtor has no business operations. Stern Declaration, at ¶¶ 5, 18, & 19.

13. In the Stern Declaration, the Debtor concedes it filed its bankruptcy case "to resolve the pending lawsuits" in the New York state courts. *Id.*, at ¶ 3. The Debtor also claims that a recent summary judgment ruling in the Tona Action has "imposed limits on JDS Fourth's ability to use existing funds … to fund defensive legal fees", which caused the Debtor to file its bankruptcy petition on the Petition Date. *Id.*, at ¶ 26.

14. It is interesting that the Debtor complains that the New York Supreme Court's ruling limited the Debtor's use of its "existing funds" and points to its inability to use its "existing funds" as the primary reason for the bankruptcy filing because the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs reflect that the Debtor has no "existing funds". In fact, the Debtor has had no income in the three years prior to the Petition

Date and there is no cash in its bank account.  *See* Schedule A/B [D.I. 22]; Statement of Financial Affairs, Part 1 [D.I. 23].

15.     The Debtor has no secured debt and only ten general unsecured creditors.  *See* Schedules D and E/F [D.I. 22].

16.     Aside from the $12,000 general unsecured claim of the Debtor's accountant, the other nine general unsecured claims are all litigation related.  There are three contingent, unliquidated, and disputed litigation claims held by the Project's investors (two Tonacchio entities and Largo).  The remaining six general unsecured claims total $521,016 in the aggregate and are for defensive legal services that were provided to the Debtor (and, upon information and belief, to certain insiders of the Debtor) in connection with the two-party dispute between the Project's investors, on the one hand, and Stern and his entities, on the other hand.  *See* Schedule E/F [D.I. 22].

17.     As a non-operating special purpose entity, the Debtor did not make any transfers to any creditors in the 90-days prior to the Petition Date.  *See* Statement of Financial Affairs, Part 2 [D.I. 23].

18.     Largo promptly filed its Dismissal Motion on June 10, 2021, which was within seven business days of the Petition Date.  *See* D.I. 7.

19.     The Debtor's Motions were filed on June 18, 2021.  *See* D.I. 14, 15, 16, & 17.

20.     Just a few hours before the filing of this Objection, the Debtor filed (i) the First Supplemental Declaration of Scott D. Cousins in Support of the Application of the Debtor to Employ and Retain Cousins Law LLC as Counsel to the Debtor *Nunc Pro Tunc* to the Petition Date [D.I. 26] (the "Supplemental Cousins Declaration") and (ii) the First Supplemental Declaration of Robert S. Rosenfeld in Support of the Application of the Debtor for Entry of an

Order Authorizing Employment and Retention of RSR Consulting LLC as Financial Advisor Nunc Pro Tunc to June 7, 2021 [D.I. 27] (the "Supplemental Rosenfeld Declaration").

## OBJECTION

21. As a gating issue, if Largo's Dismissal Motion is granted, the Debtor's Motions can be denied immediately as moot. But there are also substantive reasons supporting the denial of each of the Motions.

### I.    The DIP Financing Motion

22. By its DIP Financing Motion, the Debtor seeks approval of debtor-in-possession financing (the "DIP Facility") from a Stern-controlled entity that has been identified as both Green Health Investments LLC and Green Hill Investments LLC (the "Insider DIP Lender"). *See* DIP Financing Motion at p.1 (Green Hill Investments LLC) and ¶ 9 (Green Health Investments LLC); Supplemental Cousins Declaration, at ¶¶ 4 (Green Hill Investments LLC) & 10 (Green Health Investments LLC) and Exhibit 1 (Green Hill Investments LLC); and Supplemental Rosenfeld Declaration at ¶ 7 (Green Health Investments LLC) and Exhibit 1 (Green Hill Investments LLC).

23. Accompanying the DIP Financing Motion is a proposed order approving the DIP Financing Motion and a Debtor-In-Possession Revolving Promissory Note between the Insider DIP Lender and the Debtor (the "DIP Promissory Note"), which purports to document the terms of the loan (apparently in place of a loan agreement).

24. The Insider DIP Lender would lend the Debtor the amount of $450,000. *See* DIP Financing Motion, at ¶ 9. The DIP Facility would have an interest rate of 6% and would be made on an unsecured basis as a post-petition super priority administrative expense claim pursuant to Bankruptcy Code section 364(c)(1). *See id.*

25.     Although the Debtor set the hearing on the DIP Motion for July 8, 2021, the DIP Motion appears to state that an initial $50,000.00 was given to the Debtor's proposed bankruptcy counsel prior to the Petition Date, "which reduces the DIP size by [*sic*] equivalent amount." *See id*., at Exhibit C (first assumption listed on the 13-Week Budget). However, the Debtor's Statement of Financial Affairs discloses that yet another Stern-controlled entity, JDS Construction Group LLC, gave the Debtor's bankruptcy counsel a $51,738.00 retainer on May 28, 2021. *See* Statement of Financial Affairs, Part 6 [D.I. 23]. And yet, the Debtor's Counsel Employment Application states that the Debtor wired the prepetition retainer to its bankruptcy counsel. *See* D.I. 16, at ¶ 18. It is unclear how the provision of the prepetition retainer by an entity other than the Insider DIP Lender will be accounted for in the context of the DIP Facility.

26.     The DIP Financing Motion claims the Debtor needs the funds to "enable the Debtor to pay its fees and expenses arising from or relating to the prosecution of claims and causes of action against certain parties, the fees of its professionals to develop a plan and effectuate the orderly wind-down of its estate, and the fees due to the U.S. Trustee." *Id*., at ¶ 12.

27.     Generally, a debtor must show that incurring debt post-petition is a prudent exercise of its business judgment. *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994). However, the presence of certain facts may necessitate that debtor-in-possession financing be scrutinized under an "entire fairness" standard. For example, where debtor-in-possession financing would be provided by an insider of the debtor, where the incurrence of debt is unnecessary, or where the debtor's conduct prior to the bankruptcy otherwise makes incurrence of post-petition financing unfair, the court should apply an "entire fairness" standard and deny the requested financing. *See* Bench Ruling, *In re UCI International, LLC*, Case No. 16-11354 (MFW), D.I. 303, (Bankr. D. Del July 13, 2016) (applying entire

fairness standard in denying DIP motion after considering the debtor's prepetition conduct, that the lender was an insider of the debtor, and that it was not immediately necessary for the debtor to have access to the DIP facility); *see also In re Los Angeles Dodgers, LLC*, 457 B.R. 308 (Bankr. D. Del. 2011) (finding that proposed DIP financing was not entirely fair because it uniquely benefitted the debtor's controlling shareholder to the bankruptcy estate's detriment).

28.     Here, the Debtor acknowledges that the Court must apply the higher level of scrutiny while reviewing the proposed DIP Facility because of the insider nature of the deal. DIP Financing Motion, at ¶ 13. But the Debtor cannot show that incurrence of debt under the DIP Facility is entirely fair. As set forth in the Dismissal Motion, the Debtor has no operating business, no employees, and only one asset – membership interests in a joint venture entity. *See* Motion to Dismiss at ¶¶ 38, 70, & 76. The Debtor contemplates using nearly all of the cash from the DIP Facility to fund post-petition professional fees. The 13-week budget that was filed as an attachment to the DIP Financing Motion shows the entire $450,000 DIP Facility will be used solely for estate professionals' fees and quarterly OUST fees. Importantly, the Debtor has no legitimate business reason to incur post-petition debt because it has no business operations and therefore no business expenses. The DIP Facility is not needed to preserve the estate's only asset, its membership interest in a joint venture. There is simply no reason that the Debtor needs to access the DIP Facility, other than the self-interested desire of Michael Stern to pay the Debtor's attorneys more money to keep alive this illegitimate chapter 11 case as a tactic to interfere with the New York state court litigation.

29.     Moreover, the Insider DIP Lender (which is identified by the Debtor's professionals with two different names) is controlled by Stern, the sole principal of the Debtor's managing member. *See* Dismissal Motion, at ¶ 71. Given Stern's fraudulent and improper

prepetition conduct, the debtor-in-possession financing arrangement is highly suspect, and it is unlikely that the DIP Facility was negotiated so as to arrive at the terms most advantageous and fair to the Debtor. *See* Dismissal Motion, at ¶¶ 14-17, 23-25, 27-28, 30-35, & 71-72. In fact, the Insider DIP Lender will get at least a 6%, or perhaps a 9%, return on its proposed investment here. *See* DIP Financing Motion, at ¶ 9.

30. Additionally, the mere fact that the Debtor is not seeking liens or fees for the Insider DIP Lender in connection with the DIP Facility does not (i) insulate the proposed DIP Facility from the required scrutiny, (ii) cure the improper contemplated uses of the funds, (iii) change the unnecessary nature of the debt, or (iv) unwind the Insider DIP Lender's insider status. Each of these deficiencies alone is enough to render the DIP Facility improper and insufficient to satisfy the entire fairness standard. For all of these reasons, the DIP Motion should be denied.

**II.     The Debtor's Counsel Employment Application**

31. By the Debtor's Counsel Employment Application, the Debtor seeks to employ Cousins Law LLC ("Cousins Law") as its bankruptcy counsel under Bankruptcy Code Section 327(a). Obviously, if the chapter 11 case is dismissed, the Debtor does not need to employ bankruptcy counsel.

32. The Debtor's Statement of Financial Affairs states that Cousins Law received a $51,738.00 prepetition retainer on May 28, 2021from JDS Construction Group LLC, a Stern-controlled entity. *See* Statement of Financial Affairs, Part 6 [D.I. 23]. The Debtor's Counsel Employment Application and supporting Scott Cousins declaration claim that the Debtor wired the prepetition retainer to Cousins Law. *See See* D.I. 16, at ¶ 18; D.I. 16-2, at ¶ 11. And the DIP Financing Motion contends that the prepetition retainer was in the amount of $50,000.00. *See id.*, at Exhibit C (first assumption listed on the 13-Week Budget). So, it appears that Cousins

Law received a prepetition retainer that is part of the DIP Facility prior to the Court's approval of the DIP Financing Motion.

33.     Regardless of this unapproved retainer issue, there may be a more disconcerting fact at play here.  The Debtor's Counsel Employment Application and supporting Scott Cousins declaration state that, as of June 18, 2021, $6,933.00 of the retainer was applied to prepetition legal fees and expenses.  *See* D.I. 16, at ¶ 18; D.I. 16-2, at ¶ 11.  Following that disclosure, a footnote states as follows:

> As of the Petition Date, Cousins Law had not yet completed a final reconciliation of its prepetition fees and expenses incurred in connection with the preparation of this Case.  Upon final reconciliation of the amount actually expended prepetition, any balance remaining from the prepetition Retainer will be utilized as Cousins Law's retainer to apply to post-petition fees and expenses in this Case pursuant to the compensation procedures approved by this Court and in accordance with the Bankruptcy Code.

D.I. 16, at n. 2; D.I. 16-2, at n. 3.  This statement implies that Cousins Law holds a prepetition claim in some undisclosed amount beyond the initial $6,933.00 that was deducted from the retainer prior to the filing of the bankruptcy petition and that Cousins Law would be performing a further reconciliation so it can deduct the remaining amount accrued prepetition from the retainer during the post-petition period.

34.     But paragraph 13 of the Scott Cousins supporting declaration states as follows: "As of the Petition Date, the Debtor did not owe Cousins Law any amounts for legal services rendered before the Petition Date and Cousins Law is not a creditor of the Debtor."  D.I. 16-2, at ¶ 13.  Paragraph 14 of the Scott Cousins supporting declaration goes on to say that Cousins Law does not hold any interest adverse to the Debtor or its estate.  *Id.* at ¶ 14.

35. As noted above, the Debtor's 13-Week Budget discloses that approximately $10,000.00 of the $50,000.00 (or $51,738.00) retainer was accrued on a prepetition basis. *See* DIP Financing Motion, at Exhibit C (first assumption listed on the 13-Week Budget).

36. Upon information and belief, Cousins Law attempted to rectify these conflicting statements about being a prepetition creditor but not holding an adverse interest against the Debtor's estate by filing the Supplemental Cousins Declaration. After disclosing the application of the retainer to satisfy the $6,933.00 in prepetition legal fees and expenses, the footnote was revised so it now states:

> This leaves a balance of $44,805.00 remaining from the prepetition Retainer which will be utilized as Cousins Law's retainer to apply to post-petition fees and expenses in this Case pursuant to the compensation procedures approved by this Court and in accordance with the Bankruptcy Code.

*See* D.I. 26, at n. 3. There is no express statement waiving the remainder of its prepetition claim, but it is implied that Cousins Law will no longer be performing a final reconciliation of its remaining unpaid prepetition legal fees and expenses.

37. Largo reserves its rights to further explore the issue of whether Cousins Law is, in fact, a creditor of the Debtor with a prepetition claim (or adverse interest) against the Debtor's estate and whether Cousins Law satisfies the disinterestedness requirements of Bankruptcy Code section 327(a). *In re Princeton Med. Mgmt. Inc.,* 249 B.R. 813, 814 (Bankr. M.D. Fla. 2000) (acknowledging that where an "affidavit revealed that the accountant had performed services for the debtor before the filing of the bankruptcy case and that the debtor owed the accountant for prepetition services," that the "accountant was not a 'disinterested person' and "[t]he court was required, therefore, to deny the application"); *Matter of Patterson*, 53 B.R. 366, 372 (Bankr. D.

Neb. 1985) ("This Court is satisfied that a lawyer pre-petition creditor is not a disinterested person under the Code and, therefore, is disqualified to represent the debtor-in-possession.").

38.     Until this factual inconsistency is resolved, the Court's consideration of the Debtor's Counsel Employment Application should be delayed.

### III.     The Debtor's Financial Advisor Employment Application

39.     Aside from the Debtor not needing a financial advisor if the chapter 11 case is dismissed, Largo objects to the Debtor's proposed employment of a financial advisor because this simple chapter 11 case with no business operations, one asset, and ten creditors does not require the services of a financial advisor.

40.     While Largo does not contest the qualifications of RSR Consulting LLC, the laundry list of services it states it will be providing to the Debtor are unnecessary here.  There is no secured debt to analyze or restructure.  There is no business to sell or reorganize.  The one asset – membership interests – are not difficult to manage.  As there are no business operations, the Debtor's monthly operating reports will not require the skills of a financial advisor in order to be prepared.  Similarly, the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs were nine pages and eight pages in length, respectively, exclusive of the global notes.

41.     In short, the Debtor does not need to borrow money to pay for an estate professional that is not required here.

### IV.     The Interim Compensation Procedures Motion

42.     Again, if this chapter 11 case is dismissed, the Interim Compensation Procedures Motion must be denied as moot.

43. Similarly, if the Debtor does not employ bankruptcy professionals for the reasons identified herein, the Interim Compensation Procedures Motion will be a superfluous procedures motion that is completely unnecessary. Although the proposed interim compensation procedures appear to be routine, the Dismissal Motion and the two employment applications should be decided first before the Interim Compensation Procedures Motion is considered by the Court.

## RESERVATION OF RIGHTS

44. Largo reserves the right to amend or supplement this Objection, to introduce evidence supporting this Objection at any related hearing, and to file additional and supplemental objections.

## LOCAL RULE 9013-1(H) STATEMENT

45. Largo consents to the entry of final orders or judgments by the Court denying the Motions if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## CONCLUSION

**WHEREFORE,** Largo requests that the Court enter orders denying the Debtor's Motions and granting such further relief as is deems just and proper.

Dated: July 1, 2021　　　　　　　　　　　**BLANK ROME LLP**
　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　*/s/ Victoria Guilfoyle*
　　　　　　　　　　　　　　　　　　　　Victoria Guilfoyle (DE No. 5183)
　　　　　　　　　　　　　　　　　　　　1201 N. Market Street, Suite 800
　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　Telephone:　(302) 425-6400
　　　　　　　　　　　　　　　　　　　　Facsimile:　 (302) 425-6464
　　　　　　　　　　　　　　　　　　　　Email:　　　Guilfoyle@BlankRome.com

　　　　　　　　　　　　　　　　　　　　-and-

Craig M. Flanders (*pending pro hac vice*
1271 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 885-5000
Facsimile:     (212) 885-5001
Email:         CFlanders@BlankRome.com

-and-

Jeffrey Rhodes (pending *pro hac vice*)
International Square
1825 Eye Street NW
Washington, DC 20006
Telephone:     (202) 420-2200
Facsimile:     (202) 420-2201
Email:         JRhodes@BlankRome.com

*Counsel to Largo 613 Baltic Street Partners LLC*